# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| STEVEN ANDERSON, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV-02-205-S-LMB |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| KIM JONES,  Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Pending before the Court are various motions filed by the parties that are ripe for adjudication.  Both parties have consented to the jurisdiction of a United States Magistrate Judge to preside over this action.  (Docket Nos. 25, 27 & 28. )  *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument.  Therefore, in the interest of avoiding further delay, the Court shall decide this matter on the written motions,

MEMORANDUM DECISION AND ORDER - 1

briefs and record without oral argument.  D. Idaho L. Civ. R. 7.1(d).  Accordingly, the Court enters the following Order.

## BACKGROUND

In 2000, Petitioner Steven Kim Anderson (Petitioner) was convicted by jury of aggravated battery and rape of his girlfriend, C.B., in two separate trials in the Fifth Judicial District Court in Twin Falls County, Idaho.  Then District Judge Roger S. Burdick presided over both trials and sentencings.

This habeas corpus case concerns only Petitioner's rape conviction.[1]  Attorney Thomas Kershaw was Petitioner's counsel at the rape trial and at sentencing.  Petitioner was sentenced to fifteen years with seven years determinate for the aggravated battery conviction, and ten years to life for the rape conviction, with the fixed portion of the rape sentence to be served consecutive to the battery sentence.  (State's Lodgings A-1, pp. 86-87 & C-1, pp. 209-10.)

Earlier in this habeas corpus action, this Court granted Respondent's Motion for Partial Summary Dismissal.  Claim Seven was dismissed on grounds of failure to state a claim, while Claims One, Two, and Four (as a Sixth Amendment ineffective assistance claim) were dismissed on procedural default grounds.  (Docket Nos. 31 & 42.)  Respondent now seeks summary judgment on the merits of Claims Three, Five, and Six, as well as the claim brought in the Amended Petition that is a Fourteenth Amendment *Youngblood* claim.

---

[1]  Petitioner's aggravated battery conviction is the subject of a separate habeas corpus action, CV02-204-S-LMB, that is currently stayed pending resolution of a second state post-conviction proceeding.

MEMORANDUM DECISION AND ORDER - 2

## PRELIMINARY MOTIONS

The parties have filed several Motions for Extensions of Time to file responses and replies in this action.  (Docket Nos. 56, 65, & 67.)  Good cause appearing, the motions shall be granted.  Petitioner's Motion for Leave to File Nonconforming Brief (Docket No. 60) shall also be granted.  Petitioner has filed an oversized brief, which the Court has fully considered.

Respondent has filed a Motion to Strike (Docket No. 64), asking the Court to strike Petitioner's Exhibit B, a videotape of Detective Lewin's interview with C.B., and all references to Exhibit B contained in Petitioner's Motion Opposing Respondent's Motion for Summary Dismissal (Docket No. 61).  Respondent alleges that the videotaped interview of C.B. has never been made a part of the state court record.

If a petitioner wishes to bring new evidence on federal habeas review that has not been presented to the state courts, *and* he failed to develop the factual basis of the claims in state court because of "lack of diligence or some greater fault, attributable to" him or his counsel, then he must meet the requirements of § 2254(e)(2).  *Williams v. Taylor*, 529 U.S. 420, 432 (2000).  If he is not at fault for failing to present the evidence to the state courts, he can present the evidence on federal habeas corpus review without meeting the requirements of § 2254(e)(2).  *Holland v. Jackson*, 542 U.S. 649, 652-53 (2004).

Section 2254(e)(2) requires that a petitioner show that his claims are based either on a new retroactive rule of constitutional law or on a factual predicate that could not have been previously discovered through the exercise of due diligence, *and* that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the

MEMORANDUM DECISION AND ORDER - 3

constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *See* § 2254(e)(2)(A)&(B).

Petitioner argues that his trial counsel would not provide him with a copy of the videotape during trial.  When Petitioner finally received the videotape, the prison confiscated it and would not permit him to view it or send it to the state court.  When Petitioner complained to prison officials in writing, he was told that the judge could issue a court order to obtain the videotape.  Petitioner states that his post-conviction counsel was aware of the videotape, but failed to make use of it in the post-conviction proceedings.  (Petitioner's Response to Motion to Strike, Docket No. 70-1 & 70-2.)

Here, both Petitioner and his post-conviction counsel knew of the videotape but did not take steps to have it submitted to the state court in the post-conviction action.  The United States Supreme Court has made it clear that counsel's lack of diligence is attributable to Petitioner under these circumstances.  *Williams v. Taylor*, 529 U.S. at 432.  Because Petitioner was not diligent in bringing the videotape to the attention of the state court, he must meet the standard set by § 2254(e)(2) if he wishes to have it considered for the first time in federal court.

The Court has reviewed Petitioner's claims and the videotape, and concludes that Petitioner has met neither prong of the § 2254(e)(2) test.  Based on the evidence in the record, the Court find that Petitioner has not shown that he is pursuing a claim that involves a new retroactive rule of constitutional law, or that is based on a factual predicate that could not have been previously discovered through the exercise of due diligence.  Likewise, the video tape does not establish by clear and convincing evidence that but for the constitutional errors alleged in his claims, no reasonable factfinder would have found him guilty of the underlying offense.

MEMORANDUM DECISION AND ORDER - 4

Petitioner's trial counsel obviously had reviewed the videotape, because he quoted from it and thoroughly cross-examined the victim and the detective at trial about discrepancies in their testimony.  (State's Lodging C-2, p. 289, *et seq*.)  The information Petitioner now wishes to highlight in the videotape was, in fact, actually highlighted at trial.  The videotape also contains additional testimony from the victim that could have damaged Petitioner's case had the entire videotape been admitted at trial.  For example, the victim discusses several other incidents of domestic violence perpetrated upon her by Petitioner, including incidents where Petitioner choked her until she lost consciousness and where Petitioner beat her in a storage unit.

The Court concludes that Petitioner is not entitled to bring forward new evidence on habeas corpus review because he and his counsel did not exercise diligence in presenting it in the state post-conviction action.  In addition, it should be noted that because the content of the videotape was covered at trial by defense counsel and the videotape itself was not helpful to Petitioner's case, post-conviction counsel's failure to use it in the state post-conviction proceedings cannot be deemed to be a lack of diligence.  For these reasons, the Motion to Strike shall be granted, but the videotape shall remain part of the record for the appeal, should the Ninth Circuit Court of Appeals wish to view it to determine whether Petitioner should have been permitted to expand the record here.

## RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

### A.  Standard of Law Governing Habeas Corpus Review

The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure.  Rule 11 of the Rules Governing Section 2254 Cases.  Under the Federal Rules of Civil

Procedure, summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In general, summary judgment is not inconsistent with established habeas practice and procedure. *See Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977).  However, the summary judgment standards must be applied in light of the substantive law governing habeas proceedings.

The Petition in this case is subject to the provisions of the Anti-terrorism and Effective Death Penalty Act (AEDPA), which was enacted in 1996.  The AEDPA established a deferential standard of review that a federal habeas court must apply to a state court's resolution of constitutional claims.

Under the AEDPA, a federal court may grant habeas relief only if the state court's adjudication on the merits:

> 1.      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2.      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" federal law when the state court applied a rule of law different from the governing law set forth in United States Supreme Court precedent, or when it confronted a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrived at a different result.  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

A state court's decision is an "unreasonable application" of federal law when the court was unreasonable in applying the governing legal principle to the facts of the case.  *Id*. at 413.  A

MEMORANDUM DECISION AND ORDER - 6

federal court cannot grant habeas relief simply because it concludes in its independent judgment that the state court's decision was incorrect; instead, the decision must be "objectively unreasonable." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Though the source of clearly established federal law must come from the holdings of the United States Supreme Court, circuit law may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

Under the AEDPA, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); 28 U.S.C. § 2254(e)(1). As a result, a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2).

**B.      Discussion of Petitioner's Third Claim: Failure to Test Bed Sheets and Clothing for DNA Samples**

Petitioner's third claim is that his trial counsel was ineffective for failing to have the clothing and bed sheets of C.B. (the victim) tested for the presence of DNA and failing to move for a continuance when trial counsel discovered that the State had not conducted such testing. The victim had reported that Petitioner wiped himself off with the victim's clothing and the bedsheets after he raped her.

This ineffective assistance of counsel claim is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, an ineffective assistance claim has two components: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the petitioner. *Id.* at 687. To establish deficient performance, a petitioner must demonstrate that his

MEMORANDUM DECISION AND ORDER - 7

counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688.  To establish prejudice, Petitioner must demonstrate "a reasonable probability that, but for [his] counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  The court "must consider the totality of the evidence before the judge or jury." *Id.* at 695.

In *Strickland*, the Supreme Court explained that "[j]udicial scrutiny of a counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  "Thus, even when a court is presented with an ineffective-assistance claim not subject to §2254(d)(1) deference, a defendant must overcome the presumption that under the circumstances, the challenged action might be considered sound trial strategy." *Bell v. Cone*, 535 U.S. 685, 698 (2002) (internal quotation marks and citations omitted).

For a petitioner to succeed in a habeas case, however, "he must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly." *Id.* at 698-99. "Rather, [Petitioner] must show that the [Idaho] Court of Appeals applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

In Petitioner's post-conviction case, the State filed a motion for summary dismissal of the petition.  (State's Lodging E-1, p. 151, *et seq.*)  The state district court held oral argument on the

MEMORANDUM DECISION AND ORDER - 8

motion, during which counsel for the State and Petitioner made their respective arguments for and against dismissal.  (State's Lodging E-2, p. 48, *et seq*.)  An evidentiary hearing was not sought or held, nor was an affidavit of trial counsel presented.

At oral argument, counsel for the State argued that "The state was always very up front [about its mistake] and, in testimony by Detective Lewis said, 'I intended to send stuff off to the lab. It didn't get sent off to the lab.'" (State's Lodging E-2, at 149:9-11.)  Additional argument and discussion on this topic between Petitioner's counsel (Mr. Harris) and the state court judge at the post-conviction hearing included the following:

> The Court:    Having been given the date of the alleged rape, having had the battery case and motion to sever, any other motions there might have been, are you saying that Mr. Anderson didn't realize that there was in fact a sheet present?
>
> Mr. Harris:    No, Sir.  I acknowledge that Mr. Kershaw and Mr. Anderson both knew the sheet was present.
>
> The Court:    All right.
>
> Mr. Harris:    And they, they were under the mistaken belief from the state that the state had sent it off to the lab to be tested and they were awaiting results, when in fact it came right down before trial, and it came to light, maybe just to the state at the same time, that the detective, Detective Lewin, in his own mistake or otherwise, had inadvertently not sent it off to be tested.  As a result, Mr. Ker–
>
> The Court:    And there was no motion for a continuance based upon that by Mr. Kershaw?
>
> Mr. Harris:    Just, and I don't know the answer to that.  I don't believe there was.  I don't believe there was.
>
> The Court:    And if there wasn't, wouldn't that be just as – I can guarantee you there wasn't.  But isn't that just as likely, much like Pam Olson, the only eyewitness that may corroborate the testimony of a victim, that this is testimony that could injure Mr. Anderson, and if you don't have it, why would you ask for a continuance?

MEMORANDUM DECISION AND ORDER - 9

Mr. Harris:    Because Mr. Anderson truly believed that if the sheet and clothing had been tested, it would have been dispositive of the fact that his DNA was not there, which could have possibly been exculpatory.

(State's Lodging E-2, at 163:1 to 164:11.)   Mr. Harris later argued that "failure to investigate possible medical exculpatory evidence constitutes ineffective assistance of counsel."  (*Id.*, at 167:24-25 to 168:1.)

Other evidence at the post-conviction stage was a May 26, 1999 letter from trial counsel to Petitioner, which stated, in pertinent part:

Dear Steve:

In response to your letter of May 21, as you know, I only have a few days left before the trial and I need to spend as much time as I can dealing with the necessary issues of trial preparation.

I have given to you, reviewed with you and discussed with you all of the materials and information that I believe is necessary to me to do this trial preparation.  I expect to visit you again on Thursday or Friday to go over some other matters as may be needed.

I realize that this is a matter of great importance to you, and it is my intention to do the best job I can in representing you in this trial.  However, you need to understand that the judgment about how I will spend my time and what sort of information from you would be useful is one that must be left to my judgment.  I have been through all of the discovery and all of the transcripts.

(State's Lodging E-1, p. 131.)  This letter indicates that trial counsel was preparing for trial and had developed a strategy, though it does not address the precise issue of the bed sheets.

After hearing oral argument on the post-conviction matter, the state district court rejected the ineffective assistance claim and summarily dismissed Petitioner's petition.  (State's Lodging E-1, p. 165, *et seq*.)  The court reasoned:

Issue 7 asserts ineffective assistance of counsel by failing to obtain DNA testing on the sheets used during the rape.  Petitioner also wanted testing of C.B.'s underwear or shorts.

MEMORANDUM DECISION AND ORDER - 10

All of this evidence came out at trial that Lewis did not do a DNA analysis of the sheets, and the reason for not doing further analysis of the shorts and underwear which was worn swimming prior to C.B. reporting the rape to the police.[2]

This is a tactical decision.  The DNA would have either been exculpatory or conclusive and with the testimony of police negligence going to the jury, it is within the realm of reasonable performance not to request further testing. Additionally, this was not a case of identification in which DNA would be crucial.  The Petitioner and C.B. were known to live together in this trailer, so any DNA findings would have to take into account that this was the parties' home. Additionally, a neighbor heard the struggle of C.B. testified to, from his trailer next door.  There is no showing of prejudice or different result from this tactical decision.  Issue 7 is dismissed.

(State's Lodging E-1, p. 176.)

On appeal of the denial of Petitioner's post-conviction petition, the Idaho Court of

Appeals determined that Petitioner had not shown deficient performance because he failed to

"show that counsel's failure to obtain DNA tests was other than a legitimate tactical decision."

(State's Lodging G-16, pp. 7-8.)  The court reasoned:

We agree with the district court.  It was reasonable not to have the sheets and clothing tested, given that the parties resided together.  Testimony from the trial shows that Anderson and C.B. had engaged in consensual sexual intercourse sometime prior to the rape and that Anderson had slept in the room where the rape occurred days before the rape.  In these circumstances there would be risk that Anderson's DNA would be on the items for some reason even if, as he asserted, the alleged rape did not occur.  Rather than running this risk, it was reasonable for counsel to opt to challenge the State's investigation as negligent (for failing to conduct DNA tests) and to challenge C.B.'s statements as not credible.  Indeed, counsel reasonably could have viewed the State's failure to test the items as a windfall that gave counsel a basis to impugn the sufficiency of the State's case. The district court correctly concluded that Anderson did not show that counsel's failure to obtain DNA tests was other than a legitimate tactical decision.

_____

[2] It is unclear whether the shorts were worn swimming or left on the floor where the rape occurred.  It appears that the shorts eventually ended up in the evidence bag with the bed sheets.

MEMORANDUM DECISION AND ORDER - 11

(State's Lodging G-15, pp. 7-8.)

Petitioner argues that the Idaho Court of Appeals' opinion is based on mere speculation, because there is no evidence in the record that his trial counsel made a conscious tactical choice not to test the clothing and bed sheets.  Petitioner argues that the evidence reflects that the prosecutor and defense counsel thought the tests were being conducted, but neither checked to make sure the tests were actually completed.

Petitioner's arguments fail for several reasons.  Defense counsel is not incompetent for performing in a particular way, so long as the approach taken "might be considered sound trial strategy." *Darden v. Wainwright*, 477 U.S. 168, 186 (1986).  In *Strickland*, the Court outlined how to apply the test across the spectrum of different types of ineffectiveness claims–from full investigation by counsel to no investigation by counsel:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.
>
> These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. As the Court of Appeals concluded, strategic choices made *after thorough investigation of law and facts* relevant to plausible options are virtually unchallengeable; and strategic choices made *after less than complete investigation* are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations *or to make a reasonable decision that makes particular*

MEMORANDUM DECISION AND ORDER - 12

*investigations unnecessary*. In any ineffectiveness case, a particular decision *not to investigate* must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 690-91 (emphasis added).

In other words, under *Strickland*, it is not necessary that counsel investigate every possible piece of evidence; nor is it absolutely necessary to know whether or why counsel did not investigate a certain piece of evidence in order to apply *Strickland*.  Rather, the crucial question is whether the failure of counsel to investigate was reasonable based on all of the circumstances.  Here, counsel's letter to Petitioner indicates that he had reviewed most of the evidence and had developed and was relying on a trial strategy.  The trial transcript shows that counsel presented his evidence according to a strategy.  He argued that the victim had a motive to create the rape incident so that she could obtain custody of her son, and he argued that she and the State had a reason for failing to have the bedsheets tested and failing to have the victim undergo a rape examination.  (State's Lodging C-2, pp. 516-530.)  He also carefully limited evidence about the broken jaw incident by entering into a stipulation with the prosecution; he objected whenever the prosecution attempted to solicit such information from witnesses; and he argued that the jury was required to decide the rape issue independent from the battery conviction.  (See State's Lodging C-2.)

Both the state district court and the Idaho Court of Appeals analyzed the failure to have the bed sheets and clothing tested according to reasonableness under the circumstances, as set forth in *Strickland*.  Petitioner's counsel took advantage of the lack of testing by attributing a bad motive to the State in not performing the testing.  Counsel avoided the risk of having the sheet tests come back positive for Petitioner's DNA, which would have implicated him in the rape

MEMORANDUM DECISION AND ORDER - 13

even though the DNA could have been from consensual sexual relations days before the rape incident.  Evidence in the record shows that Petitioner and the victim had lived together and that the victim identified herself as Petitioner's wife.  (State's Lodging C-2, pp. 297-300.)  Petitioner insists that he did not ever use that bed; however, counsel is not required to believe every statement made by his client, but to assess the entire set of circumstances.  As noted above, it was a reasonable strategy for Petitioner's counsel to argue that the State had a motive for not testing the bed sheets and shorts rather than to request a continuance to complete the tests.

As to the failure to have the bed sheets and clothing tested for DNA, the state district court determined that not only was there no deficient performance, but more importantly, no prejudice occurred to Petitioner's case.  A neighbor corroborated the victim's story.  The story of the victim's son and the son's father regarding events directly after the incident supported the victim's story, and contradicted the Petitioner's story. There was no issue in the case as to the identity of the rapist; the issue was, rather, whether Petitioner had nonconsensual sex with his girlfriend, the victim.  In addition, the evidence showed that the zipper of the victim's shorts was ripped, consistent with the victim's story.

The state district court found no deficient performance and no prejudice.  The Idaho Court of Appeals did not reach the prejudice prong of the *Strickland* test because failure under the deficient performance prong causes the entire test to fail.  After careful consideration of the entire record, this Court agrees with the state district court that Petitioner failed to show either deficient performance or prejudice, and notes that, in any event, on habeas corpus review the standard is not whether the state court decision is merely incorrect, but whether it is objectively unreasonable.  *See Bell v. Cone*, 535 U.S. at 698.

MEMORANDUM DECISION AND ORDER - 14

Based upon all of the foregoing, the Court concludes that the state court opinions are not contrary to, or unreasonable applications of, *Strickland*.  This Court agrees that Petitioner has shown neither deficient performance nor prejudice to his defense.  Accordingly, Petitioner is not entitled to habeas corpus relief on his ineffective assistance of counsel claim under § 2254(d).

### C.      Discussion of Petitioner's Fourth/Amended Petition *Youngblood* Claim

Petitioner's next claim (brought as part of his fourth claim in the original Petition or an additional claim in his Amended Petition) is that his Fourteenth Amendment due process rights were violated when the police decided not to take C.B. to the hospital for a physical examination after the rape.  He argues that the police acted in bad faith and deprived him of potentially exculpatory evidence in violation of standards established in *Arizona v. Youngblood*, 488 U.S. 51 (1988).

In *Youngblood*, the Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."  *Id*. at 58.  Such "potentially useful information" does not need to arise to the level of "material exculpatory evidence" addressed in *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  *See Illinois v. Fisher*, 540 U.S. 544, 548 (2004).

On appeal of Petitioner's post-conviction case, the Idaho Court of Appeals held that Petitioner had failed to show that the investigating officer acted in bad faith in deciding not to take C.B. to the hospital for testing.  (State's Lodging G-15, p. 12.)  Particularly, the Idaho Court of Appeals determined:

> The testimony presented at trial does not support a conclusion that the investigating officer made the decision not to take C.B. to the hospital in an effort to prevent Anderson from obtaining exculpatory evidence for use at trial.  The investigating officer testified that he believed that fluid samples and evidence

MEMORANDUM DECISION AND ORDER - 15

from the rape would have been lost because C.B. went swimming after the incident.  While it may have been negligent or even incompetent for an officer to reach such a conclusion, given that an examination possibly could have revealed bruising or tearing or evidence from inside C.B.'s body, it does not suggest bad faith.  Indeed, nothing in the evidence indicates that the police officer had reason to believe that evidence from a rape examination would have been exculpatory.  Logically, given what the officer had been told by C.B., the officer would have expected that physical evidence from C.B.'s body would have incriminated Anderson, but the officer inappropriately assumed that all such evidence had already been lost because of C.B.'s swim.  Anderson has made no showing that the investigating officer acted purposefully to make exculpatory evidence unavailable to Anderson. Accordingly, the district court did not err in concluding that Anderson's petition failed to establish a claim of a due process violation.

(State's Lodging G-15, p. 12.)

This Court agrees that there is no evidence in the record to show that the officer made a decision *in bad faith* or for the purpose of thwarting Petitioner's defense.  Rather, the officer took into account that C.B. had gone swimming after the rape, which could have destroyed or disrupted any *surface* evidence.  That he failed at the time to consider evidence that might have been discovered by an internal examination shows negligence, but not bad faith.

Petitioner argues that the failure to test the sheets, the failure to perform a rape test on the victim, and the officers' acts in giving C.B. a paper bag to collect the evidence rather than collecting it themselves all show that the police officers acted in bad faith.  To the contrary, the failure to test the sheets and clothing appeared to be a mistake that occurred because the detective went on vacation and assumed a summary page order would be filled out for the lab (which acted as the order to tell the lab technicians what to test for), but the summary page order was never filled out, preventing the testing from occurring.  (State's Lodging C-2, at 431:2-22.)

MEMORANDUM DECISION AND ORDER - 16

The Court also notes that the evidence obtained by the police officers suggested that C.B. had repeatedly been the victim of domestic violence at the hands of Petitioner.[3]  At the time of the initial interview discussed at trial, the victim complained of a broken jaw and rape occurring two weeks apart, both perpetuated by Petitioner.  The course of action taken by the detective reflects that he acted carefully and cautiously with regard to the feelings of the victim, not an inappropriate way to handle a delicate domestic violence situation where the identity of the perpetrator was not at issue.

Based on a review of the entire record, the Court concludes that the Idaho Court of Appeals' rejection of Petitioner's *Youngblood* claim was not contrary to, nor an unreasonable application of, United States Supreme Court precedent.  As a result, Petitioner is not entitled to relief under § 2254(d).

### D.        Discussion of Petitioner's Fifth Claim: *Brady* Violation

Petitioner alleges that the State violated his Fourteenth Amendment due process rights by failing to disclose that C.B. (the victim) and Pat Gilbert (a witness) had been confidential informants in other cases.  In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the United States

---

[3]  Evidence at trial was also consistent with the premise that C.B. had been repeatedly physically abused by Petitioner.  When asked how she felt after the rape incident, C.B. testified at trial:

> My, my description of it is about knee-high to a grasshopper.  You don't have no self-respect, love, nothing here.  You know, if you do anything else, then you're just going to get beat up again, you're going to get hurt worse, you know.  You don't – it's embarrassing to even face anybody on the street, as if you feel like everybody knows.

(State's Lodging C-2, at 274:15-22.)  (There was also some evidence at the sentencing hearings that C.B. had been abusive of Petitioner, but that is not relevant to this issue.)

MEMORANDUM DECISION AND ORDER - 17

Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  In *United States v. Bagley*, 473 U.S. 667, 676 (1985), the United States Supreme Court clarified that "impeachment evidence . . . as well as exculpatory evidence, falls within the *Brady* rule."   The Supreme Court also clearly abandoned the practice that a different standard of law should be applied depending upon whether the defense had requested the information.  *Id*. at 683 (disavowing distinctions stated in *United States v. Agurs*, 427 U.S. 97 (1976)).

The *Bagley* decision also clarified that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Id*. at 682.  In other words, a "'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  *Id*.

In *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), the United States Supreme Court held that impeachment evidence known only to the police but unknown to the prosecutor was subject to *Brady* disclosure.  The *Kyles* Court also emphasized that the *Bagley* materiality test requires the court to consider the suppressed evidence "collectively, not item by item."  *Id*. at 436. Particularly, the *Kyles* Court explained:

> [Courts] should evaluate the tendency and force of the undisclosed evidence item by item; there is no other way.  We evaluate its cumulative effect for purposes of materiality separately and at the end of the discussion.

*Id*. at 436 n.10.

On appeal of the dismissal of Petitioner's post-conviction petition, the Idaho Court of Appeals commented:

MEMORANDUM DECISION AND ORDER - 18

Regarding C.B., Anderson contended that because he was not told she was a confidential informant, he was not able to discover and present evidence that C.B. was induced to testify in exchange for the State's assistance in regaining the custody of her child.  He asserts that C.B. indeed received custody of the child one week after Anderson was sentenced.  However, he claims that these promises were made by the State at a child protection hearing on April 23, 2002.  The criminal proceedings against Anderson took place during 1998 and 1999.  It is not logically possible that promises made by the State to C.B. at a child protection hearing occurring years after Anderson's trial could have affected C.B.'s testimony at his trial.  In addition, we do not perceive how the fact that C.B. may have acted as a confidential informant for the State on other cases in the past would have given her any motive to fabricate the rape charge against Anderson. Accordingly, this claim was properly dismissed.

(State's Lodging G-15, p. 14.)

Petitioner argues that the Idaho Court of Appeals misunderstood the underlying facts and misinterpreted his argument.  He states that C.B. was a paid confidential informant in Case No. CR-1996-4250, *State v. James Allen Schevers*, a robbery case commenced by the Twin Falls County Prosecutor on December 19, 1996 and concluded with conviction by jury and a judgment entered on August 27, 1997.[4]  He also alleges that C.B. was an informant on another case against Petitioner which was prosecuted by the same office and allegedly dismissed before trial.

Petitioner further alleges that during the April 23, 2002 child welfare hearing in Jerome County (regarding the children of C.B. and Petitioner), the prosecutor stated that in 1998 or 1999 she made sure that the C.B. testified against Petitioner in the aggravated battery/rape cases by doing personal favors for C.B. and helping her obtain custody of her son (the son of C.B. and Dan Winkler). There is no evidence in the record supporting Petitioner's allegation; however, Petitioner argues that he requested a transcript of the April 23, 2002 proceedings from the state

---

[4]  See www.id.courts.us/repository.

MEMORANDUM DECISION AND ORDER - 19

court in post-conviction proceedings, but the transcript was not authorized or produced in that

action.

Particularly, on September 6, 2002, during the post-conviction proceedings, Petitioner

filed a motion for the state district court to order  the transcripts prepared.  The state court did

not order the transcript of the child protection hearing transcribed, but did ask the prosecutor to

produce records in camera for any case in which C.B. had been an informant.  (State's Lodging

E-2, at 44:19-22.)

On January 9, 2003, at the next hearing on the post-conviction matter, the same

prosecutor who had appeared at trial, Janice Kroeger, did not produce any records, but gave a

verbal report to the state court:

> And in fact, [his] defense is, the defendant is contending that [C.B.] was a
> CI, and that is in [paragraph] number one eighty, again, and he lived with her for
> a while, he has more information than I have, I was not aware of any CI situation
> for [C.B.] Definitely, she was not a CI on our case.  She had no deals in our case.
> *She was getting no benefit from testifying in our case, other than any general
> benefit that would accrue to a victim in a criminal court case and eventually got
> protection from Steve Anderson*.
>
> But the court did ask me specifically to call and confirm whether or not
> there was any CI agreement.  I received a call that in November of 1996, the City
> used her one time.  I don't know what that was for.  It's my understanding she
> received no direct criminal benefit for it.  It wasn't for a charge kind of thing.  But
> they did have a record that they used her one time in 1/96.  They said further
> digging, they could probably pull that and tell me the details.
>
> But again, notwithstanding the Florida case that he cites in paragraph one-
> eighty-one, the state was not aware of it, and again, I think there is – it's totally
> irrelevant to this trial and the times that she was testifying.

(State's Lodging E-2, at 154:9-25; 155:1-9 (emphasis added).)[5]

---

[5]  The prosecutor also provided an oral report on whether Dan Winkler was a confidential
informant, but did not address whether Patrick Gilbert was a confidential informant.  This

MEMORANDUM DECISION AND ORDER - 20

Petitioner appealed the issue of the state court's denial of the transcript.  It does appear that the Idaho Court of Appeals misunderstood his argument in part, and, as a result, found and concluded that the April 2002 hearing transcript was simply irrelevant.  The Court finds that Petitioner was diligent in trying to obtain the transcript in the state court proceedings.  Therefore, he can present the evidence on federal habeas corpus review without meeting the requirements of § 2254(e)(2).  *Holland v. Jackson*, 542 U.S. at 652-53.

The Court concludes that it would be appropriate and helpful to determining this issue to expand the record by ordering Respondent to obtain the transcript from the April 23, 2002 hearing in Jerome County regarding the children of C.B. and Petitioner and lodge it with the Clerk of Court in this case.  It may be lodged under seal if necessary.  The Court will defer ruling on the Motion for Summary Judgment as to this portion of the claim, and will consider this aspect of the Motion after the transcript has been filed.

The Court will grant the motion for summary judgment on the portion of the claim that alleges C.B. was a confidential informant in other criminal cases, including a case against Petitioner.  The Idaho Court of Appeals' determination that Petitioner failed to show that any link between C.B.'s prior testimony in other criminal cases and her own case against Petitioner existed such that *Brady* would have applied is not contrary to or an unreasonable application of *Brady* and its progeny.  Neither is it an unreasonable determination of the facts based upon the evidence found in the record before this Court.  Relief cannot be granted on this claim under § 2254(d).

---

appears to be a result of Petitioner's counsel's mention of Winkler rather than Gilbert at the hearing on the request for transcripts.  (State's Lodging E-2, at 44:4-13.)

Petitioner next alleges that Patrick Gilbert, a witness at Petitioner's rape trial, was an active confidential informant for the state prosecutor's office on at least two other criminal cases that were pending at the same time as Petitioner's case.  Petitioner alleges that Gilbert was charged with felony possession of a controlled substance, and that his agreement with the prosecutor was to help with seven felony convictions to reduce his own criminal offense.  Petitioner alleges that Gilbert apparently testified in two other sales of narcotics cases, *State v. Manuel Rojas* and *State v. Joel Campos*.[6]  Petitioner states that he became aware of Gilbert's confidential informant status only after Petitioner's trial (but before sentencing).  (See State's Lodging A-3, at 101:9-11.)

On appeal of the post-conviction case, the Idaho Court of Appeals observed:

> Regarding Pat Gilbert, Anderson claims that Gilbert had been charged with felony possession of a controlled substance, and agreed to help the State with several other cases in exchange for the State's leniency.  Even if Anderson had been able to impeach Gilbert by showing that he was testifying in order to earn the State's favor, there is no likelihood that the result of the trial would have been different.  In the rape trial, Gilbert was called as a rebuttal witness who briefly testified that he had heard Anderson brag about breaking C.B.'s jaw, thus corroborating the State's evidence that during the rape Anderson had threatened to re-injure C.B.  Gilbert's testimony was merely peripheral to the rape charge.  Even absent this testimony, there was other evidence that Anderson had threatened C.B., as well as sufficient evidence of rape unrelated to the issue of the earlier injury to C.B.'s jaw.  Under these circumstances, we cannot say that Gilbert's status as a confidential informant was "material" evidence such that the State's failure to disclosure it would constitute a violation of *Brady*.

(State's Lodging G-15, p. 14.)

---

[6]  *See State of Idaho v. Joel Tarango Campos*, CR-1998-4524, begun November 12, 1998, concluded by order dismissing case without prejudice on January 8, 1999, found at www.idcourts.us/repository.  The Court finds no record of a similar Twin Falls County for Manuel or Manual Rojas.

MEMORANDUM DECISION AND ORDER - 22

This Court agrees.  At the rape trial, "Anderson did not dispute that C.B. had a broken jaw when the rape was alleged to have occurred, and he stipulated that he had been convicted of aggravated battery for breaking her jaw."  (State's Lodging D-4, p. 3.)  The testimony from Gilbert was both peripheral and unnecessary, and impeachment evidence would not have changed the outcome of the trial.

As a result, the Court concludes that the Idaho Court of Appeals' decision rejecting Petitioner's argument that the prosecution violated *Brady* by failing to disclosure Patrick Gilbert's confidential informant status in unrelated cases (if true) is not contrary to, or an unreasonable application of, controlling United States Supreme Court precedent.  Nor is the decision based on an unreasonable determination of the facts.  Accordingly, relief under § 2254(d) is not warranted.

**E.      Discussion of Sixth Claim: Sentencing Error**s

Petitioner's sixth claim is that his Sixth Amendment and Fourteenth Amendment rights were violated when the trial court and Petitioner's counsel relied on a Pre-Sentence Investigation Report (PSI) that mistakenly showed Petitioner had been convicted of five prior felonies rather than three prior felonies.  He also alleges that his counsel failed to provide him with a copy of the PSI prior to the sentencing hearing.

Under the Fourteenth Amendment, due process may be violated if sentences are "imposed on the basis of misinformation of constitutional magnitude."  *Roberts v. U.S.*, 445 U.S. 552, 556 (1980) (internal citations omitted) (regarding factual misinformation).  *See also Townsend v. Burke*, 334 U.S. 736, 741 (1948) (sentence based on false information with no

MEMORANDUM DECISION AND ORDER - 23

opportunity to correct it is a due process violation).  In addition, the *Strickland* standard, set forth above, applies to Petitioner's Sixth Amendment claim.

On review of the dismissal of Petitioner's post-conviction petition, the Idaho Court of Appeals determined:

> Even assuming that counsel was deficient Anderson has not shown that he was prejudiced by his attorney's performance.  We first note that regardless of what was contained in the PSI, it appears that the district court considered only three felony convictions.  In the sentencing on the aggravated battery, the judge noted that "I've rarely seen so many contacts with police, and even if you distill the presentence in terms of the contacts with police, there are 38 convictions for misdemeanors or felonies, he has topped out *all three felony prison terms*."  (Emphasis added by Idaho Court of Appeals.)
>
> If the attorney's failures did lead the court to erroneously consider two felony convictions that did not exist, Anderson has not shown how evidence of two fewer convictions would have caused the court to impose a more lenient sentence, given the sheer number of convictions Anderson has accumulated.  Moreover, the court also based its decision on Anderson's lack of remorse for the rape and aggravated battery, his blame and intimidation of the victim, his history of drug and anger problems, the significant injuries the victim suffered, and the serious nature of the two felony-level crimes that were committed against the same victim within a two-week period.  Under these circumstances, Anderson has not shown that he was prejudiced by any deficient performance.

(State's Lodging G-15, pp. 8-9.)

Respondent asserts that the Idaho Court of Appeals made a factual finding that the state district court relied on only three prior felony convictions, as set forth in the state district court's statement above.  This Court has reviewed the PSI Reports.  (State's Lodgings A-4 & C-4.) While the laundry list of past crimes shows at least four felony convictions and several felony dismissals, the investigator's "Prior Record Comments" section of the PSI report shows only three "topped out" felonies (meaning Petitioner served his whole sentence) (State's Lodging A-4, pp. 12-13 & C-4, pp. 12-13); and the investigator's "Comments and Analysis of Defendant's

Condition" section in each report states: "Mr. Anderson has had three felony convictions and has been incarcerated three times with the Idaho Department of Correction."[7]  (State's Lodging A-4, p. 16 & C-4, p. 16.)

At the sentencing hearing on the rape conviction, the state district court incorporated by reference the comments it had made in the sentencing hearing on the battery conviction.  (State's Lodging C-3, at 43:22-25 to 44:1-3.)  This Court has reviewed the sentencing hearing transcripts of the aggravated battery and rape convictions.  (State's Lodgings A-3 & C-3.)  There are no references to "five" felony convictions in either transcript.  In the first hearing, commenting on the Pre-Sentence Investigation (PSI) Report, Petitioner's counsel noted that there were only three felonies:

> Page 16, under investigator's comments and analysis, third paragraph, it indicates that he's been charged with numerous crimes of violence.  Again, we'd just point out that by far the majority of those have been dismissed.  It says he has three felony convictions and has been incarcerated three times.  Actually, it's twice, Your Honor, not three times.  Two of them were done in the form of concurrent sentences.

(State's Exhibit A-3, at 12:24 to 13:7.)  In addition, Petitioner's counsel pointed out a variety of problems with the PSI report, indicating that Petitioner had at least some opportunity to review it with counsel.  (State's Exhibit A-3, pp. 10-13.)

---

[7]  The three incarceration period statement (rather than two) was corrected by counsel, as noted later in the body of this Order.

MEMORANDUM DECISION AND ORDER - 25

In a federal habeas corpus proceeding, a state court's determination of a factual issue is presumed to be correct.[8]  28 U.S.C. § 2254(e)(1).  A petitioner may rebut the presumption by clear and convincing evidence.  *See id.*  Here, Petitioner has not brought forward clear and convincing evidence to show that the Idaho Court of Appeals' factual determination–that the sentencing court considered only three prior felonies–is incorrect.  In addition, given Petitioner's actual criminal background, as well as considering the testimony of the witnesses at the sentencing hearings,[9] the Court also concludes that no prejudice occurred to Petitioner as a result of the erroneous PSI Report or Petitioner's inability to have a copy of the Report.

Accordingly, Petitioner has not met his burden to show that he is entitled to relief under § 2254(d)(1) or (2).  The Idaho Court of Appeals' decision is not contrary to, nor an unreasonable application of United States Supreme Court precedent governing due process and ineffective assistance claims, nor is the decision based upon an unreasonable determination of the facts in light of the state court record.  As a result, Respondent is entitled to summary judgment on this claim.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

---

[8]  In *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981), the Supreme Court noted that the presumption of correctness of findings of fact also applies to findings made by state appellate courts.  This principle has been applied notwithstanding subsequent changes made to § 2254(d) by AEDPA.  *See Torres v. Prunty*, 223 F.3d 1103, 1110 (9th Cir. 2000) (acknowledging principle but declining to rely on state appellate court's finding because it was unreasonable); *see also Abrams v. Barnett,* 121 F.3d 1036, 1038 (7th Cir. 1997) (findings of state appellate court entitled to presumption of correctness under AEDPA § 2254(e)(1)).

[9]  The 13-year-old son of C.B. testified that on two different occasions he tried to stop Petitioner from beating his mother, but Petitioner chased him away from the scene with a gun and a dart gun. (State's Lodging A-3, pp. 15-28.)

MEMORANDUM DECISION AND ORDER - 26

1.      Respondent's Motion for Summary Judgment (Docket No. 54) is GRANTED IN PART as to all claims except the *Brady* claim regarding whether the prosecutor gave aid to C.B., the victim, in exchange for C.B.'s testimony at the rape trial; the ruling on the Motion for Summary Judgment is on that remaining claim is DEFERRED;

2.      Petitioner's Motion for Extension of Time to File Response (Docket No. 56) is GRANTED;

3.      Petitioner's Motion for Leave to File Nonconforming Brief (Docket No. 60) is GRANTED;

4.      Respondent's Motion to Strike (Docket No. 64) is GRANTED; the Court has not considered Petitioner's Exhibit B (a videotape) in these proceedings, but the videotape shall remain part of the record for the appeal, should the Ninth Circuit Court of Appeals wish to view it to determine whether Petitioner should have been permitted to expand the record here.

5.      Respondent's Motion for Extension of Time to File Response/Reply (Docket No. 65) is GRANTED;

6.      Petitioner's Motion for Extension of Time to File Response (Docket No. 67) is GRANTED; and

7.      Within ninety (90) days after entry of this Order, Respondent obtain the transcript from the April 23, 2002 hearing in Jerome County regarding the children of C.B. and Petitioner and lodge it under seal if deemed advisable or file an explanation of the reason it cannot be lodged.

MEMORANDUM DECISION AND ORDER - 27



DATED:  **September 28, 2009**.

Honorable Larry M. Boyle
United States Magistrate Judge